IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| **KIMBERLY CARR,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**HUMANA INC.**<br><br>*Defendant.* | Case No. 3:25-cv-476-DJH<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT HUMANA INC.'S MOTION TO DISMISS COMPLAINT
AND DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Humana Inc. ("Humana"), by and through its undersigned counsel, moves to dismiss the Class Action Complaint and Demand for Jury Trial (the "Complaint") filed by Plaintiff Kimberly Carr ("Plaintiff"), in its entirety, and in support thereof states as follows:

**I.     INTRODUCTION**

Plaintiff asserts two separate claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227: (1) that she received text messages that violated a regulation promulgated under the TCPA because they failed to include required Caller ID information, and (2) that she received text messages and phone calls that violated the TCPA because her number is listed on the federal Do Not Call ("DNC") Registry. Plaintiff's Complaint must be dismissed for multiple reasons.

*First,* there is no private right of action under the TCPA's Caller ID regulation, 47 C.F.R. § 64.1601(e), as courts have repeatedly held.

*Second*, the Caller ID regulation does not apply to text messages.

*Third*, to the extent that they are based on text messages, both of Plaintiff's claims are conclusory and insufficiently pled. Plaintiff alleges that Humana is liable for the sending of text messages sent to Plaintiff that nowhere mention Humana, by the owner of "short-code 73056."[1] Dkt. 1, ¶26. But Plaintiff fails to plead any facts supporting Humana's direct or vicarious liability for the sending of these messages. Plaintiff states that Humana is liable because the text messages supposedly included a link to a website that she does not allege was Humana's, which somewhere among its contents included a phone number where Humana could be reached. This does not amount to a well-pleaded allegation that Humana was the sender of the messages, or that the sender had authority to send them on behalf of Humana.

*Fourth*, Plaintiff has failed to plausibly allege that the voice calls she claims to have received were "telephone solicitations" under the statute. Plaintiff admits that all the calls were made following an inquiry *she* made, and all were made within 8 days of her inquiry – well within the timeframe to create an "established business relationship" that would carve the calls out of the TCPA's definition of "telephone solicitations." Plaintiff has therefore failed to allege an essential element of her claim.

For all of these reasons, the Complaint must be dismissed. Because many of these defects are not ones that could be cured by re-pleading, Humana requests that the claims be dismissed with prejudice.

---

[1] Plaintiff does not allege – and cannot allege – that Humana owns this short-code. Sending a "HELP" message to short-code 73056 yields a reply indicating the short code is owned by a company called "MedicarePolicyPlus" at medicarepolicyplus.co, and not Humana.

## II.   LEGAL STANDARD

Under federal pleading standards, a plaintiff must plead "(1) a short and plain statement of the grounds for the court's jurisdiction… [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  A court must dismiss a complaint like Plaintiff's, which fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation omitted).  Stated differently, Plaintiff must include factual allegations which support an inference that Humana is liable for sending Plaintiff the unwanted text messages and voice calls. When determining plausibility, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (quotation omitted).  In other words, Plaintiff cannot make bald, unsupported allegations and expect the Court to accept them as fact. Moreover, the "[f]actual allegations must be enough to raise a right to relief above a speculative level[.]" *Id*. at 1959.  "Threadbare recitals of a cause of action's elements, supported by mere conclusory statements," will be insufficient to meet this pleading standard. *Iqbal*, 129 S. Ct. at 1940 (citation omitted).

## III.   ARGUMENT

Plaintiff makes two types of complaints against Humana:  (1) that text messages she allegedly received did not contain specific Caller ID information that she contends is required by regulations promulgated by the Federal Communications Commission ("FCC"); and (2) that she was sent text messages and called by someone regarding Humana insurance in violation of the

3

TCPA because she is listed on the National Do Not Call ("DNC") Registry. However, the Caller ID regulations do not include a private right of action, and they do not apply to text messages, in any event. In addition, she fails to include plausible allegations that Humana actually sent the text messages or had vicarious liability for the entity that did. Further, Plaintiff has failed to adequately plead that Humana made any "telephone solicitations" to Plaintiff, since Plaintiff admits that she called Humana and made an inquiry, and the calls she alleges followed that inquiry, as permitted by the TCPA. Thus, for each of her claims, Plaintiff fails to plausibly allege facts that support such claims against Humana, and accordingly, her Complaint must be dismissed.

      **A.    The Caller ID Related Claims Should Be Dismissed Pursuant To Rule 12(b)(6) Because No Private Right Of Action Exists Under 47 C.F.R. § 64.1601(e)(1).**

As an initial matter, the Caller ID related claims fail as a matter of law because there is no private right of action under the regulation Plaintiff cites to supports the claims.

Plaintiff cites 47 C.F.R. § 64.1601(e)(1) as the basis for her claim that the text messages violated the TCPA for failing to include sufficient Caller-ID information. That regulation requires any "person or entity that engages in telemarketing" to "transmit caller identification information," which it defines as "either CPN [Calling Party Number] or ANI [Automatic Number Identification], and, when available by the telemarketer's carrier, the name of the telemarketer." But as courts have overwhelmingly held, 47 C.F.R. § 64.1601(e)(1) does not contemplate a private right of action because it was not promulgated under subsection (b) or (c) of the TCPA, the only subsections that authorize private rights of action. *See, e.g.*, *Griffin v. Am.-Amicable Life Ins. Co. of Texas*, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024) (granting motion to dismiss in part because there is no private right of action under section 64.1601(e)); *Dobronski v. SunPath Ltd.*, 2020 WL 8840311, at *7 (E.D. Mich July 20, 2020) (same); *Dobronski v. Total Ins. Brokers, LLC*, 2021 WL 4452218, at *3 (E.D. Mich. Sept. 29, 2021) (same) *Dobronski v. Selectquote Ins. Servs.*,

4

462 F. Supp. 3d 784, 790 (E.D. Mich. 2020) (denying plaintiff's motion for leave to amend as futile because there is no private right of action under section 64.1601(e)); *Meyer v. Cap. All. Grp.*, 2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017) (granting motion to dismiss in part because there is no private right of action under section 64.1601(e)); *Worsham v. Disc. Power, Inc.,* 2021 WL 3212589, at *4 (D. Md. July 29, 2021), *amended on reconsideration*, 2021 WL 5742382 (D. Md. Dec. 1, 2021), *aff'd*, 2023 WL 2570961 (4th Cir. Mar. 20, 2023) (same); *Dobronski v. Tobias & Assocs.*, 2023 WL 7005844, at *8 (E.D. Mich. Sept. 25, 2023), *report and recommendation adopted in pertinent part sub nom. Dobronski v. Tobias & Assocs., Inc.,* 2024 WL 1174553 (E.D. Mich. Mar. 18, 2024) (recommending dismissal because there is no private right of action under section 64.1601(e)); *Worsham v. Travel Options, Inc.,* 2016 WL 4592373, at *7 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017) (granting judgment to defendant on CallerID claim because no private right of action exists under that regulation); *Worsham v. Direct Energy Servs., LLC*, 2021 WL 948819, at *3 (D. Md. Mar. 12, 2021), aff'd, No. 21-1677, 2022 WL 1261998 (4th Cir. Apr. 28, 2022) (granting summary judgment on the same grounds).[2]

Congress has never granted authority for a private right of action under the Caller ID regulation, and without statutory authority for such a right, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). The TCPA offers a private right of action only in specific circumstances. For instance, 47 U.S.C. § 227(b)'s private right of action applies only to a "violation of the subsection or the regulations prescribed under this subsection." 47 U.S.C. § 227(b)(3)(A). And § 227(c)'s private right of action applies only to

---

[2] Plaintiff may argue that a Pennsylvania district court recently held otherwise in *Newell v. JR Capital, LLC,* 2025 WL 2004706 (E.D. Pa. July 16, 2025), but that court identified no other court that had so held, and the great weight of authority supports Humana's position.

a "violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5)(A). However, Congress did not create a private right of action for subsections (d) or (e) of § 227, and if Congress has not created a private right of action for a statute, courts will not infer one. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 571-72 (1979) (no private right of action where Congress provided for such a right in some sections of a statute, but not others). If a statute and its implementing regulations have expressly created a private right of action in one section, but have not expressly done so elsewhere, then it is "highly improbable" that Congress and the FCC "absentmindedly forgot to mention an intended private action." *Transamerica Mtg Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979).

The FCC noted in promulgating 47 C.F.R. § 64.1601(e) that the Caller ID regulation would "provide an important resource for the **FCC and [Federal Trade Commission]** in pursuing enforcement actions against TCPA and [Telemarketing Sales Rule] violators." *In Re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14121-14122 (2003) (emphasis added). Thus, the FCC contemplated *agency* enforcement, not *private* enforcement, when it issued the Caller ID regulation. Moreover, the TCPA's subsections 227(d), which relates to "technical and procedural standards," and 227(e), which refers to Caller ID restrictions, both notably lack any reference to a private right of action. 47 U.S.C. § 227(d)-(e). Furthermore, as discussed above, courts have repeatedly held that the Caller ID regulation in 47 C.F.R. § 64.1601(e) is not enforceable through a private right of action.

Pursuant to the overwhelming authority that no private right of action exists for Plaintiff's claim under § 64.1601(e)(1), Plaintiff's claims thereunder must be dismissed.

**B.     The Caller ID Related Claims Should Be Dismissed Pursuant To Rule 12(b)(6) Because 47 C.F.R. § 64.1601(e)(1) Does Not Apply To Wireless Communications.**

Plaintiff also does not, and cannot, plausibly even allege a violation of 47 C.F.R. § 64.1601, because the regulation does not apply to text messages. The basic principles of statutory construction apply to the interpretation of regulations, as the Sixth Circuit has emphasized. *In re Anheuser-Busch Beer Labeling Marketing and Sales Practices Litigation*, 644 Fed. App'x 515, 525 (6th Cir. 2016) (affirming district court's granting of motion to dismiss and interpreting regulation according to its plain meaning because "courts may not rely on broad conceptions of statutory or regulatory purpose to overcome otherwise clear language"). Accordingly, when interpreting a regulation, courts look to the regulation's plain wording. "[N]o law pursues its purpose at all costs, and textual limitations upon a law's scope are no less a part of its purpose than its substantive authorizations." *Id.* (quotation omitted). The plain language of the Caller ID regulation indicates that it does not apply to text messages, because they are not sent over the public switched telephone network ("PSTN").

Section 64.1601 regulates communications over the "public switched telephone network (PSTN)." 47 C.F.R. § 64.1601(a). However, Plaintiff fails to allege that she received the text messages at issue over the PSTN, nor could she. The PSTN is the traditional landline telephone network, and text messages are not sent over the PSTN. *See In re Petitions for Declaratory Ruling on Regulatory Status of Wireless Messaging Service*, 33 FCC Rcd. 12075, 2018 WL 6590245, ¶33 n. 109 (December 13, 2018) ("the public switched network itself is not one that generally supports text messaging."). *See also In the Matter of Targeting and Eliminating Unlawful Text Messages Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 38 FCC Rcd. 2744, 2023 WL 2582658, ¶ 3 n.3 (Mar. 17, 2023) (texting is not a common carrier service);

*accord Twilio, Inc. v. Telesign Corp.,* 2017 WL 4573371, at *1 (N.D. Cal. Oct. 13, 2017) (distinguishing voice calls transmitted over PSTN from text messages sent via SMS).

Indeed, the Sixth Circuit recently emphasized that the PSTN is simply "a network interconnected to the [North American Numbering Plan's] 10-digit system of telephone switching." *In re MCP No. 185*, 124 F.4th 993, 1011 (6th Cir. 2025). Here, Plaintiff's Complaint alleges that "[a]ll text messages were sent from short-code 73056." *See* Dkt. 1, ¶ 26. Clearly, the texts messages were not sent over a "10-digit system" and therefore cannot be construed as communications sent over the PSTN, under the plain meaning of 47 C.F.R. § 64.1601(a). Thus, Plaintiff has not plausibly alleged that Section 64.1601 applies to the text messages at issue.

    **C.**    **The Text Message Claims in the Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Because Plaintiff Fails To Plausibly Allege Direct Or Vicarious Liability For The Text Messages At Issue.**

In addition, to the extent that both claims in the Complaint are based on text messages, they fail because Plaintiff does not plead – and cannot plead – sufficient facts to plausibly support any theory of liability against Humana regarding these messages. Under the TCPA, a defendant may be directly or vicariously liable. *In re Joint Petition filed by DISH Network, LLC, et al.*, 28 FCC Rcd. 6574, 6584 (2013) ("DISH Network"). Accordingly, Plaintiff must adequately plead that Humana is responsible for sending the text messages at issue, either on a theory of direct liability, which applies only to entities that "initiate" the telemarketing calls (or text messages), or on a theory of vicarious liability, which, in the TCPA context, is governed by the federal common law of agency. *Id*. Because Plaintiff has failed to adequately plead either direct or vicarious liability, her text message-based claims should be dismissed.

            *i.*      *Plaintiff fails to allege that Humana is directly liable for sending the text messages in question.*

Plaintiff fails to include well-pleaded allegations that Humana was the sender of the text messages. The Complaint includes images of the text messages, and they do not mention Humana. *See* Dkt. 1, ¶ 27. She alleges that the text messages were sent to her from short-code 73056, which she does not (and cannot) allege is owned by Humana. *Id.*, ¶ 26. The messages read: "This year Cornelius, you may claim new Medicare Benefits! Qualify for free groceries & $0 care. Medipolicy.com/26WMI1R or msg STOP to end." *Id.*, ¶ 27. Plaintiff does not (and cannot) allege that Humana is the only insurance company that offers Medicare policies, and she does not (and cannot) allege that the website mentioned in the message belongs to Humana. The only connection to Humana alleged by Plaintiff is that the website somewhere among its contents listed a number where Humana could supposedly be reached. *Id.*, ¶ 29.

Under the TCPA, direct liability applies only to persons or entities that "initiate" telemarketing calls, which means to "take the steps necessary to physically place" a call (or send a text). *DISH Network*, 28 FCC Rcd. 6574, 6582-83 (2013). Courts, in this circuit and others, routinely hold that a defendant only has direct liability under the TCPA if that entity actually took the steps necessary to physically place each call. *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2021 WL 1946645 at *2 (M.D. Tenn. May 14, 2021) (dismissing claims that the defendant could be directly liable under the TCPA because complaint contained no specific factual allegations that could plausibly demonstrate the defendant initiated any call to the plaintiff); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *4 (S.D. Ohio July 10, 2015) (granting motion to dismiss because complaint failed to adequately allege a cause of action under a direct liability theory); *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2-4 (N.D. Cal. May 13,

2020) (granting motion to dismiss because plaintiff failed to plead sufficient facts to show that defendant was directly involved in sending text messages).

Plaintiff's allegations here are not sufficient to plead that Humana took the steps necessary to physically send the messages. Plaintiff makes the conclusory allegation that "Plaintiff received text messages from Defendant," but the facts she alleges do not support an inference that Humana was directly involved in sending the texts, which again, do not mention Humana at all. Dkt. 1, ¶¶ 25, 27. She alleges only that these text messages included a link to a website that "listed a phone number of (855) 784-4371 to call for more information."[3] *Id.* ¶¶ 27-29. Even if it were true that this was Humana's number, this would not amount to an allegation that Humana took any steps to physically initiate the text messages—and Plaintiff has carefully avoided making an allegation that it did so.

In a factually similar case, *Cunningham v. Health Plan Intermediaries Holdings, LLC, et al.*, the court dismissed claims that defendant AXIS had violated the TCPA because the complaint "contain[ed] no specific factual allegations that AXIS initiated any call to Cunningham." 2021 WL 1946645, at *2. The plaintiff had alleged that "Defendants contacted Plaintiff on Plaintiff's cellular telephone," but the complaint did "not contain sufficient allegations to hold [AXIS] directly liable under the TCPA because it [did] not include allegations that [AXIS] took any steps to physically initiate a call." *Id.* (citing Second Amended Complaint, *Cunningham*, 2017 WL 11421121 (M.D.Tenn.)). Here, Plaintiff merely alleges that "Plaintiff received text messages from Defendant[.]" Dkt. 1, ¶ 25. As *Cunningham* makes clear, this type of conclusory allegation is not enough to adequately allege Humana's involvement in sending the text messages. In other words, Plaintiff has failed to allege direct liability.

---

[3]    This phone number also does not belong to Humana, and Plaintiff does not allege that it does.

Indeed, courts routinely hold that allegations like Plaintiff's are not sufficient to allege direct TCPA liability. *See, e.g., Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019) ("Merely alleging that [a defendant] 'made' or 'initiated' [a] call... is not sufficient to allege" direct liability for a TCPA claim without "allegations that [the defendant] exercised any discernible involvement in deciding whether, when, or to whom the text message is sent, or what the text message said"); *Hicks v. Alarm.com*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (finding plaintiff's allegations of direct liability insufficient where there were "no facts detailing [defendant's] involvement in **placing** any calls") (emphasis in original); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) (granting motion to dismiss TCPA claim because "there [were] no factual allegations that Defendant actually made the telephone call at issue"); *Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (dismissing TCPA claims where plaintiff "offer[ed] no factual support" for allegation that the defendant was the "source of the alleged calls"); *Sepehry-Fard v. Dep't Stores Nat'l Bank*, 15 F. Supp. 3d 984, 988 (N.D. Cal. 2014) (dismissing TCPA claims where there were "no facts alleged showing why plaintiff believe[d] [defendants] were responsible for specifically identified calls that used prerecorded voices in violation of the TCPA"), *aff'd*, 670 F. App'x 573 (9th Cir. 2016). Here, Plaintiff similarly alleges in a conclusory fashion, without any factual support, that "Plaintiff received text messages from Defendant." Dkt. 1, ¶ 25. This is not enough.

A recent TCPA case from this district, *Harrison v. Humana Inc.*, underscores this pleading deficiency. 2024 WL 4828737 (W.D. Ky. Nov. 19, 2024) (Stivers, J.). In *Harrison*, the court held that the plaintiff had adequately alleged direct liability because he alleged he was called by someone who identified him or herself as being from Humana. *Id.* at *5. Here, Plaintiff does not, and cannot make such an allegation about the text messages, which do not mention Humana a

11

single time. Accordingly, Plaintiff has failed to adequately allege facts that allow this Court to draw a reasonable inference that Humana can be held responsible for the text messages under a direct liability theory.

>             ii.    *Plaintiff fails to allege that Humana is vicariously liable for the text messages in question.*

It is not clear from the Complaint that Plaintiff is claiming that Humana is vicariously liable for the messaging activity of a third-party since Plaintiff makes conclusory allegations that the messages were "from Defendant." *See* Dkt. 1 ¶ 24. But in any event, Plaintiff does not plead any facts that would support a reasonable inference that Humana is vicariously liable for the sending of the messages. Under FCC rules, vicarious liability under the TCPA is governed by the federal common law of agency. *DISH Network*, 30 FCC Rcd. at 6574. When applying agency principles to federal statutes, the Restatement (Third) of Agency is used by courts as a beginning point for a discussion of general agency principles. *Cunningham*, 2021 WL 1946645 at *3. The Restatement lays out three types of agency relationships: actual authority, apparent authority, and ratification. §§ 2.01, 2.03, 4.01. Although "[e]xplicit pleading is not the standard," a well-pled Complaint must "plead 'factual content that allows the court to draw the reasonable inference that [the defendant] is liable for the misconduct alleged." *Eldridge v. Cabela's Incorporated*, 2017 WL 4364205, at *5 (W.D. Ky. Sept. 29, 2017) (Hale, J.). Here, Plaintiff's conclusory allegations do not reasonably permit an inference that Humana is responsible for the text messages under any kind of agency relationship.

First, Plaintiff does not adequately allege any facts to establish that the sender had actual authority to act for Humana. "[A]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."

*Cunningham*, 2021 WL 1946645 at *3 (quoting Restatement (Third) of Agency § 2.01). Nowhere does Plaintiff allege a statement or action by Humana that would lead the sender to believe it had authority to send the text messages as Humana's agent. The mere fact that a company's phone number is published on a website, without more, does not support a reasonable inference that the mentioned company authorized the publisher of the website was to send text messages on behalf of the listed company (or even to include its number on the website).

This case differs from *Eldridge v. Cabela's Incorporated*, in which this Court denied Cabela's motion to dismiss a TCPA claim where the plaintiff had alleged that the caller, World's Foremost Bank ("WFB"), was "a wholly owned subsidiary of Cabela's 'established' to issue and manage the Cabela's CLUB Visa credit card." 2017 WL 4364205, at *5. This Court held that "Cabela's creation of WFB for the sole purpose of issuing and managing credit" was a manifestation by Cabela's that WFB had the authority to act for it, thereby permitting an inference of agency. *Id. See also Jewell v. Magnolia Bank, Inc.*, 2024 WL 203972, at *4 (W.D. Ky. Jan. 18, 20204) (actual authority shown when the original caller, who stated he was calling on behalf of the defendant, transferred the call to one of the defendant's employees). Here, Plaintiff makes no allegations that the text message sender was a subsidiary of Humana or that Humana made any sort of manifestation to authorize the text message sender to act for Humana.

Second, Plaintiff has not alleged any facts to indicate that Humana had apparent authority over the sender of the text messages. Apparent authority exists only when a third-party reasonably believes the agent has authority to act and that belief is traceable to a manifestation by the principal. *Cunningham*, 2021 WL 1946645 at *3; *DISH Network*, 28 FCC Rcd. 6574, 6586 (2013). "[U]nder the theory of apparent authority, a principal will incur liability for the acts of an agent if the principal held the agent out to third parties as possessing sufficient authority to commit the

particular act in question, and there was reliance upon the apparent authority." *Kern v. VIP Travel Servs.*, WL 1905868 at *7 (W.D. Mich. 2017) ("The apparent power of an agent is to be determined by the act *of the principal and not by the acts of the agent*[.]") (internal citation omitted) (emphasis in original). Plaintiff has not alleged any facts that support that Humana held the sender of the text messages out as having any authority from Humana to send messages on Humana's behalf. Further, the Complaint does not allege any connection between the text messages and Humana, other than that Plaintiff claims she was eventually able to call someone who stated she was from Humana by clicking on a link in the messages and then dialing a number she found somewhere on the linked site. (Dkt. 1, ¶¶ 27-31). Even if Plaintiff reached someone at Humana by using this number, Humana is not vicariously liable for the actions of every third party that publishes Humana's phone number somewhere on a website. Although alleging that a purported agent held itself out as an agent of the principal is sufficient to allege apparent authority, Plaintiff here makes no such allegations – and she cannot since the messages do not mention Humana. *Harrison* , 2024 WL 4828737, at *3..

Finally, Plaintiff's conclusory allegations cannot support a theory that Humana is responsible for the actions of the owner of the relevant short-code by virtue of ratification. Ratification only exists when a principal knowingly accepts the benefits of an actor's conduct. *Cunningham*, 2021 WL 1946645 at *4; *DISH Network*, 28 FCC Rcd. at 6586-87. "A person may ratify an act... by receiving or retaining benefits it generates if the person has knowledge of material facts and no independent claim to the benefit." Restatement (Third) of Agency § 4.01 cmt. g. Here, Plaintiff has failed to allege that Humana benefited in any way from the text messages or from any other of the third party's conduct. Nor does the Complaint contain any allegations from which this Court may reasonably infer that Humana knew of the third party's alleged unlawful text

messages. This case stands in contrast again to *Eldridge*, where this Court held that the plaintiff had adequately pled a ratification theory by asserting that Cabela's discussed the CLUB Visa card collection and recovery processes in its SEC filings, demonstrating its knowledge. 2017 WL 4364205, at *6. Plaintiff here does not identify any statements made or actions taken by Humana reflecting knowledge of the text messages, much less acceptance of any purported benefit that they yielded. Therefore, Plaintiff has not stated a claim for ratification, nor could she.

> **D.     The Telephone Call-Based Claims in the Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Because Plaintiff Fails To Plausibly Allege That The Return Telephone Calls Made To Plaintiff Are "Telephone Solicitations."**

Finally, the telephone call-based claims must be dismissed, because Plaintiff pleads that they all followed an inquiry that she made, so they are not actionable "telephone solicitations." The TCPA prohibits making "telephone solicitations" to numbers on the National DNC Registry. 47 CFR § 64.1200(c)(2). A "telephone solicitation" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person," but does not include a call made "to any person with whom the caller has an established business relationship." 47 U.S.C. § 227(a)(4)(B); 47 C.F.R. § 64.1200(f)(15).

Plaintiff does not plausibly allege that she received a telephone solicitation from Humana. Instead, she merely alleges that on February 28, 2025, *she herself* called a telephone number for "more information" and spoke to someone who she claims stated she was from Humana. Dkt. 1, ¶¶ 28-30. She alleges that she ended the call and received callbacks related to the initial inquiry *that she admittedly made*. *Id.* ¶¶ 32-38. She appears to allege that she received an immediate callback after her February 28 call to the number that she alleges belongs to Humana, and then that two voicemails were left from another person for whom she claims Humana is responsible on

15

March 8, 2025—just 8 days after her inquiry. *Id.* This very clearly fits the TCPA's definition of an "established business relationship"—which is "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber . . . on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call[.]" 47 C.F.R. 64.1200(f)(5); 47 U.S.C. § 227(a)(2). Thus, Plaintiff's allegations support only that the calls were made in the context of an established business relationship and, therefore, the statute prevents them from being deemed "telephone solicitations." 47 U.S.C. § 227(a)(4)(B); 47 C.F.R. § 64.1200(f)(15). Accordingly, Plaintiff has not alleged that Humana made any "telephone solicitations" to her and therefore, she has not stated a claim for violations of the TCPA's Do Not Call provisions.

## IV.　CONCLUSION

For all of the foregoing reasons, Humana respectfully requests that this Court dismiss the Complaint with prejudice pursuant to Rule 12(b)(6).[4]

---

[4] If the Court believes that Plaintiff has sufficiently pleaded any claim, Humana respectfully requests that the magistrate judge set a schedule that limits initial discovery to: (1) whether the text messages to Ms. Carr were actually sent by Humana or anyone acting with authority from Humana, and (2) whether the calls were made to Ms. Carr in response to an inquiry from her or someone with whom she shares a number. Humana also requests that any schedule set a date for an expedited summary judgment motions on these narrow, dispositive issues. Humana had no relationship with the apparent sender of the text messages and Humana made no telephone solicitations to Plaintiff. It would, therefore, serve the interests of judicial economy to resolve these narrow issues at the outset, and not allow expensive class-wide discovery that puts inordinate pressure on a defendant to settle.

Dated: August 21, 2025               Respectfully submitted,

                                     By:  /s/ Michael P. Abate
                                          Michael P. Abate
                                          Burt A. ("Chuck") Stinson
                                          Kaplan Johnson Abate & Bird LLP
                                          710 W. Main St., 4th Floor
                                          Louisville, KY 40202
                                          (502) 450-8280
                                          mabate@kaplanjohnsonlaw.com
                                          cstinson@kaplanjohnsonlaw.com

                                          Darci F. Madden (*pro hac vice forthcoming)*
                                          Martha Kohlstrand (*pro hac vice forthcoming*)
                                          Justin Kingsolver (pro hac vice forthcoming)
                                          Bryan Cave Leighton Paisner LLP
                                          211 N. Broadway, Suite 3600
                                          St. Louis, MO 63102
                                          314-259-2000
                                          Darci.madden@bclplaw.com
                                          Martha.kohlstrand@bclplaw.com
                                          Justin.Kingsolver@bclplaw.com

                                          *Attorneys for Defendant Humana Inc.*

**CERTIFICATE OF SERVICE**

  The undersigned certifies that on August 21, 2025, a copy of the foregoing was filed with the Court and served on counsel through the court's CM/ECF system.

                       */s/ Michael P. Abate*