**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

| | |
|---|---|
| **KIMBERLY CARR,** individually and on behalf of all others similarly situated, | Case No. 3:25-cv-00476-DJH |
| *Plaintiff,* | **CLASS ACTION** |
| *v.* | **JURY TRIAL DEMANDED** |
| **HUMANA INC.** | |
| *Defendant.* | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

## INTRODUCTION

Defendant's motion to dismiss revolves around two central premises, that there is no private right of action for the TCPA's Caller ID regulations, and that the Defendant did not send the text messages the Complaint says Defendant did. As to the first point, courts across the country are increasingly holding that there is a private right of action for violations of such regulations. As to the second, nearly every court to consider pleadings similar to those here, including this one, has held that they are sufficient at the pleadings stage to set forth a claim for direct liability. As a result, Defendant's motion should be denied.

## RELEVANT FACTS

Ms. Carr is, and has been, the sole and customary user of her residential cellular telephone line, (904) XXX-XXXX, which she uses for personal, household purposes and which has been registered on the National Do-Not-Call Registry since November 1, 2024. She has never been a customer of Humana and did not consent to receive telemarketing calls or text messages from Humana. *See* Plaintiff's Class Action Complaint, ECF No. 1, at ¶¶ 16-23 (Compl.). Despite that, Ms. Carr received multiple telemarketing text messages and phone calls concerning Humana's insurance products in February and March of 2025.

Plaintiff received at least four text messages on February 25, February 27, March 5, and March 11, 2025. All text messages were sent from the Caller ID number 73056 and promoted Medicare insurance services with a link. (Compl. ¶¶ 24–27, 38.) The text messages transmitted caller identification information solely as 73056. It is not possible to call that number to lodge a do not call request during regular business hours, it is not possible to converse by text with any person at that number to make such a request, and no alternative telephone number is provided in the messages for that purpose. (Compl. ¶¶ 38–43.)

1

On February 28, 2025, Ms. Carr clicked the link in a message sent on February 27, which led to a website listing a telephone number, (855) 784-4371, to call for more information. When Plaintiff called that number, she spoke with "Ronela Baijal," who stated she was from Humana. Public insurance licensing records identify an Ileana Ronela Baijal as a licensed Humana insurance employee, listing Humana's Green Bay, Wisconsin address and the email SALICENSING@HUMANA.COM . Ms. Carr ended the call. (Compl. ¶¶ 28–32.) Immediately thereafter, Ms. Baijal called Ms. Carr back on (904) XXX-XXXX, the same number registered on the National Do-Not-Call Registry, which Ms. Carr rejected, and despite the Plaintiff having called Ms. Baijal from a different phone number of hers entirely. (Compl. ¶¶ 33–34.) On March 8, 2025, Ms. Carr received two additional voicemails from telephone number (502) 301-1970, which transmitted CNAM identifying the caller as "Humana Inc." In one voicemail, the caller stated: "Hey Ms. Donna, it's Adria Lucas from Humana. . . You should reach me at 800-537-3709. My extension is 1441182. . . . ." (Compl. ¶¶ 35–37.) These calls and texts from Humana were unwanted, nonconsensual, and repeatedly invaded Ms. Carr's privacy, occupying her telephone line, storage, and bandwidth. (Compl. ¶¶ 45–49.)

On August 21, 2025, Humana filed a Motion to Dismiss, which challenges, among other things, the telemarketing Caller ID allegations and the Do Not Call claims. This response follows.

**LEGAL STANDARD**

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), it is axiomatic that "[t]he complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff."

*In re FCA US LLC Monostable Electronic Gearshift Litig.*, 280 F. Supp. 3d 975, 990 (E.D.

Mich. 2017) (citing *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001)).

> Stated succinctly:
>
> When considering a Fed. R. Civ. P. 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff. A court must also accept all of a plaintiff's allegations as true. Mere labels and conclusions, or a formulaic recitation of the elements of a cause of action's elements are insufficient. However, this standard is satisfied when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Harrison v. Humana, Inc.*, No. 3:24-cv-00262-GNS, 2024 WL 4828737, at *1 (W.D. Ky. Nov.

19, 2024) (Stivers, J.) (denying motion to dismiss claims under the TCPA) (cleaned up).

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon

which relief can be granted. In order to state a claim upon which relief can be granted, a

complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the

pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the

Rules demand only a short and plain statement of the claim showing that the pleader is entitled to

relief, in order to give defendant fair notice of what the claim is and the grounds upon which it

rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The requirement that a plaintiff

"show" that he or she is entitled to relief means that a complaint must contain sufficient factual

matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (cleaned up).

## ARGUMENT

### I.    There is a private right of action for the Caller ID claims, which apply to text messages.

Humana's first main argument in its motion to dismiss consists of two subparts: first, that

there is no private right of action for the TCPA's Caller ID provisions contained in 47 C.F.R. §

64.1601(e), and second, that even if there is, such a right of action does not apply to text messages. Federal courts across the country have been uniformly rejecting both of Humana's arguments in recent months.

Defendant's first argument, that the FCC did not promulgate Section 64.1601(e) under either 47 USC § 227(c) or (b)'s provisions, which both contain private rights of action, is at odds with the case law and legislative history establishing that the subject section was promulgated pursuant to statutory authority contained in 47 USC § 227(c). Contrary to the Defendant's representations, both case law and legislative history confirm that the instant regulation at issue here, 47 C.F.R. § 64.1601(e), was promulgated under Section 227(c) of the TCPA, which contains a private right of action, and *not* Section 227(d), or any other subsection, such as Section 227(e), as the out-of-date and misapplied citations Defendant proffers have held. Defendant's point is off base because Defendant, like the authorities it cites, including *Dobronski* and *Worsham*, does not engage in a proper analysis of the statute. Defendant's argument is at odds with case law otherwise and the very statutory authority advanced by Congress.

As with any question of statutory interpretation, the court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). As Defendant readily acknowledges in its motion, the subject regulation must have been promulgated under *some* part of the TCPA. (Br. at p. 6 (quoting *Alexander v. Sandoval*)). As a codified federal regulation dealing with "telemarketing," and with explicit references to the definitions promulgated under the TCPA in 1991 in 47 C.F.R. § 64.1200(f)(13), this particular regulation must have been promulgated under *some* part of the TCPA. "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). As Defendant's own authority counsels, language in a

4

regulation cannot "conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). Thus, the question that Defendant's motion poses, and the question that this Court is called upon to answer, is thus: under what subsection of the TCPA was the instant regulation, 47 C.F.R. § 64.1601(e), promulgated?

To this question, Defendant proffers no answer or analysis. It simply speculates that it was not Sections 227(b) or (c) and seems to intuit that it was promulgated either under Sections 227(d) or (e), neither of which contain a private right of action. But, as Plaintiff's careful analysis of the relevant provisions counsels, it will become evident that the subject regulation was promulgated pursuant to Section 227(c).

The relevant regulation here, 47 C.F.R. § 64.1601(e), provides that "any person or entity that engages in telemarketing, as defined in section 64.1200(f)([13, formerly 10]), must transmit caller identification information." In this regard, as outlined above, only a handful of subsections of the TCPA allow for the promulgation of regulations:

- § 227(b)(2) authorizes the FCC to implement requirements that relate to the use of prerecorded voices and automatic telephone dialing systems;
- § 227(c) authorizes the FCC to promulgate rules relating to the "need to protect residential telephone subscribers' privacy rights";
- § 227(d)(1)–(3) allow regulations relating to technical and procedural standards related to fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message";
- § 227(e)(3) provides for regulations relating to misleading or inaccurate Caller ID; and
- § 227(i) allows for the FCC to promulgate regulations to streamline information sharing with the FCC related to violations

*Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 376 (E.D. Mich. 2025). As the Court observed in *Dobronski*, all but § 227(c), including the sections posited but un-analyzed by Defendant, are quickly eliminated as not even remotely applicable to the statutory provision here. The statutory provision at issue here could not have been promulgated pursuant to Section

5

227(d)(1), as Defendant here seems to intuit, as did the defendant in *Dobronski*, because that Section relates only to fax machines and automatic telephone dialing systems, not to telemarketing calls in general, just as Section 227(b), which is similarly inapplicable. It would be downright peculiar for the FCC to promulgate regulations "applying to all calls, including those that do not relate to automatic dialing, fax machines, or artificial or prerecorded messages" under Section 227(d)(1). *Id.* (citing *Worsham v. LifeStation, Inc.*, No. 661, 2021 WL 5358876, at *17 (Md. Ct. Spec. App. Nov. 17, 2021)). Defendant's reading would result in the FCC promulgating rulemaking in excess of its Congressionally granted authority. Given that Section 227(d) addresses procedural standards relating to the matters of Section 227(b), it cannot be the source of the subject provision, which itself plainly applies to and references 227(c), which deals with privacy. Nor is Section 227(e) a possible candidate, either. Although that section deals with certain Caller ID regulations, Congress passed that section of the TCPA more than five years *after* the FCC promulgated the instant regulatory law. *Dobronski*, 773 F. Supp. 3d at 376 ("[T]he TCPA was amended to include § 227(e) only *years after* the FCC promulgated § 64.1601(e). The FCC could not have promulgated a regulation pursuant to authority that it did not yet have.").

A review of the appropriate legislative history confirms that the instant regulation here was promulgated in 2003 under rulemaking Congress explicitly authorized when it passed the Do Not Call Implementation Act of 2003, 15 U.S.C. § 6153 ("2003 Act"), which related to *consumer privacy*, the mainstay of Section 227(c). Pursuant to that mandate, the FCC began a rulemaking proceeding that expressly sought comment on whether "network technologies have been developed over the last decade," and which ultimately resulted in an order promulgating the implementation and incorporation of the instant Caller ID legislative rule, as well as Do Not Call Registry rules. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*

6

("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14118. As the FCC explained in that 2003 TCPA Order rulemaking proceeding, "The new rules will also require all companies conducting telemarketing to transmit caller identification (Caller ID) information, when available, and prohibits them from blocking such information." *Id.* at 14017.

"[T]he 2003 FCC [TCPA O]rder applies to section 227(c). . . .Therefore, Radvansky may bring a case." *Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1321, 1321 n.3, n.4 (N.D. Ga. 2024). The 2003 TCPA Order references Section 227(c) no fewer than 54 times and a single other section, Section 227(d), only *once*, in the context of a 1997 regulation requiring fax broadcasters to print their information on fax messages. *Id.* at 14134. It references no other section of the TCPA as authority for the regulations it promulgated. Indeed, the FCC *explicitly tied* the Caller ID requirements at issue here to the TCPA's private right of action in Section 227(c), reasoning that "Caller ID requirements will improve the ability of consumers *to identify and enforce* do-not-call rights against telemarketers. . . . Consumers are frustrated by the failure of many telemarketers to transmit Caller ID information, which, under certain circumstances, *makes it difficult for consumers to enforce* the TCPA." *Id.* at 14068, 14118 (emphasis added). It concluded that, pursuant to its authority *under Section 227(c) of the TCPA*, "the Caller ID requirements at 47 C.F.R. § 64.1601(e) will go into effect on January 29, 2004." *Id.* at 14143. There can be no question that the FCC promulgated the instant regulation under its authority under Section 227(c) of the TCPA, which required the FCC to promulgate privacy regulations.

As the *Dobronski* Court observed in commenting on the history of the TCPA:

[T]he regulatory history further buttresses its view. In an early rulemaking proceeding under the TCPA, the FCC noted that the TCPA directed it to consider a "number of alternatives for residential telephone subscribers to avoid receiving unwanted telephone solicitations ... includ[ing] a national database, network technologies, special directory markings, time of day restrictions, and industry-based or company-specific do-not-call lists." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752,

7

8758 (1992). There can be little doubt that that direction came from § 227(c). *See* 47 U.S.C. § 227(c)(1)(A) (directing the FCC to "compare and evaluate alternative methods and procedures [including the use of electronic databases, telephone network technologies, special directory markings, industry-based or company-specific "do not call" systems, and any other alternative]"). Then, in evaluating those alternatives, the FCC identified the lack of widespread Caller ID as a barrier to cost-effective network technology implementation. *In the Matter of Rules*, 7 F.C.C. Rcd. at 8761.

In 2003, the FCC referred back to the discussion from above, and then it: expressly sought comment on whether "network technologies have been developed over the last decade," specifically asked "whether to require telemarketers to transmit the name and telephone number of the calling party," assessed Caller ID's effectiveness and efficiency in supporting consumer privacy rights, and "determined to require all sellers and telemarketers to transmit Caller ID information." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14118–21 (2003). It elsewhere concluded that "Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers." *Id.* at 14068. The agency record thus suggests that Caller ID requirements are a telephone network technology or other alternative that the FCC required in an attempt to help consumers enforce their privacy rights against telemarketers.

*Dobronski*, 773 F. Supp. 3d at 376-77.

The Defendant's argument must also fail because, in the 2003 Act, at 15 U.S.C. § 6153, Congress *explicitly* delegated authority to the FCC to promulgate regulations relating to the newly-created National Do Not Call Registry "under the [TCPA]," and the FCC did so by initiating a rulemaking proceeding under subsection (c), the only appropriate subsection dealing with "consumer privacy." *Dobronski*, 773 F. Supp. 3d at 377. The header of Section 1601 addresses "privacy restrictions." Critically, *the FCC also promulgated Section 1601 in the same Order as Section 64.1200(c)*, as outlined above. As *Dobronski* counsels, "That places § 64.1601(e) in the heartland of § 227(c), and thus supports the conclusion that the former was prescribed under the latter and benefits from § 227(c)(5)'s private right of action." *Id.*

Given that the 2003 TCPA Order was the *very same Order* that established the National Do Not Call Registry in Section 64.1200(c), it would be incongruous to hold that it created a private right of action for the DNC requirements but at the same time failed to create them for the Caller ID requirements in Section 64.1601(e). And under the 2003 Congressional mandate,

8

the FCC promulgated the instant regulation, 47 C.F.R. § 64.1601(e), pursuant to its authority *under* the TCPA, and pursuant to the *explicit authority* Congress in 2003 gave the FCC to conduct rulemaking *"under"* the TCPA, not just with respect to the Do Not Call Registry, as Defendant claims, but the other consumer privacy rulemaking Congress empowered the FCC to promulgate. 15 U.S.C. § 6153; s*ee also Siringi v. Parkway Fam. Mazda/Kia*, No. CV H-23-1499, 2023 WL 7130867, at *2 (S.D. Tex. Oct. 30, 2023) ("The Federal Communications Commission promulgated 47 C.F.R. § 64.1200 under its authority to implement the Telephone Consumer Protection Act."). The plain text of the 2003 Act, as well as the FCC's resultant 2003 TCPA Order, *supra*, belies the Defendant's contention that those rules were not issued pursuant to authority from Subsection 227(c) the TCPA. Reading the 2003 Act as empowering regulations *under the TCPA's Section 227(c)* fits with how statutes, amendments, and administrative rulemaking works–the authorizing statute does not become the base statute or amendment, nor does the authorized rule. *See Alexander*, 532 U.S. at 286, 291 (explaining genesis of a right of action). And it is the plain meaning evident from the text.

As outlined above, only a handful of subsections of the TCPA allow for the promulgation of regulations, and § 227(c) is the only appropriate one applicable here. The establishment of regulations "under the TCPA" for the transmission of Caller ID information has nothing to do with regulations concerning autodialers (§ 227(b)), fax machines and other systems used to transmit prerecorded messages (§ 227(d)), or information sharing with the FCC ((§ 227(i)). It also can have nothing to do with later 2009 regulations surrounding the transmission of misleading or inaccurate Caller ID (§ 227(e)), brought about by the Truth in Caller ID Act of 2009, as outlined above. Those regulations called for under the 2003 Act, including the Caller ID requirement at issue here, fit nicely within § 227(c), and only that subsection, which explicitly

deals with the promulgation of regulations to "protect residential telephone subscribers' privacy rights." And, as explained above, Section 227(c), under which 47 C.F.R. § 64.1601(e) was unquestionably promulgated, contains a private right of action.

Nor does the case law hold otherwise. Several of the cases cited by Defendant are other Michigan district court cases that were subsequently reversed in *Dobronski*. And neither *Travel Options* nor *Griffin* reached the conclusion that there was no right of action independently; rather, these cases relied on faulty and underdeveloped reasoning in other cases, which themselves did not engage in extensive analysis. And in *Meyer*, the plaintiffs wrongly conceded that there was no right of action, and the Court there was persuaded by the reasoning in *Travel Options*. No other case addresses Section 64.1601(e). As the *Dobronski* Court explained:

> In *Travel Options*, the court determined that § 64.1601(e) was promulgated to enforce § 227(d), which lacks a private right of action, because § 64.1601(e)'s Caller ID requirement resembles "technical and procedural standards." In doing so, the court noted that the outcome was "not clear." To be sure, § 227(d) is titled "Technical and Procedural Standards," and it is not unreasonable to think that Caller ID is "technical" or "procedural." But slotting § 64.1601(e) into § 227(d) on that basis is a little odd, given that § 64.1601(e) focuses on Caller ID requirements for all telemarketing calls, and § 227(d) by its own terms governs only fax machines, automatic telephone dialing systems, and artificial or prerecorded voice systems. . . . By contrast, § 227(c) focuses on privacy rights generally and also spoke in terms of "methods and procedures" as well as "telephone network technologies" as mechanisms to protect subscriber privacy rights. . . . But it does not follow that the FCC could not promulgate technology-focused rules (like a caller-ID requirement) under § 227(c)'s "telephone network technologies" language merely because it could also protect subscriber privacy rights in other, non-technological ways. . . . And it is not intuitive why the fact that a rule directly supports § 227(c)'s goals by employing a network technology and "will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers" bolsters the notion that § 64.1601(e) was not promulgated under the statute's subsection focused on protecting privacy rights. The Court sees no textual basis to carve from regulations that "protect" privacy rights those that merely "support" consumers' ability to enforce their rights—i.e., privacy rights are protected in part because wrongdoers are prohibited from hiding behind anonymity. At bottom, subsection 227(c) lets the FCC make rules to protect privacy rights and lets consumers sue when telemarketers violate those rules; § 64.1601(e) is a rule that helps protect privacy rights. *Travel Options's* influential inference seems to run uphill. . . . The other cases add little because they largely rely on *Travel Options* or on each other. . . . Those cases provided little analysis beyond that performed in *Travel Options*.

10

*Dobronski*, 773 F. Supp. 3d at 379. And for that matter, district courts across the country are increasingly holding that there exists a private right of action for violations of Section 64.1601(e). *E.g.*, *Newell v. JR Cap., LLC*, No. CV 25-1419, --- F.Supp.3d ---, 2025 WL 2004706, at *2 (E.D. Pa. July 16, 2025); *Dobronski v. CHW Grp., Inc.*, No. 24-CV-11649, 2025 WL 2426370, at *8 (E.D. Mich. Aug. 21, 2025); *Dobronski v. JuliasAngel Marketing, LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265, at *11 (E.D. Mich. Sept. 17, 2025) (vacating magistrate judge's recommendation to dismiss Section 64.1601(e) claim but otherwise refusing to address issue on mootness grounds).

In any event, the fact remains that the FCC stated that it promulgated the instant Caller ID regulations at 47 C.F.R. § 64.1601(e) pursuant to authority Congress gave it in 15 U.S.C. § 6153, which authorized the FCC to promulgate the instant regulation "under" the TCPA at 227(c). *See Bowen*, 488 U.S. at 208. The *only* authority "under" which the FCC could promulgate regulations "under the [TCPA]" that supports the Congressional mandate is § 227(c), which provides for the instant private right of action to "protect residential subscribers' privacy rights to avoid receiving telephone solicitations to which they object." The FCC said so itself, confirming it was doing so pursuant to § 227(c). *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019) (citing 47 C.F.R. § 64.1200(c)(2) and explaining that it was created pursuant to regulations promulgated by the FCC under Section 227(c)). There is simply no other statutory subsection "under the TCPA" upon which Congress could direct the FCC to promulgate the Caller ID regulations it ordered the FCC implement (including to align with the FTC), the entire purpose of which is to permit consumers to *lodge their objections against unsolicited telemarketing calls*. There exists a private right of action for violations of 47 C.F.R. § 64.1601(e) (as with 64.1200(c) and (d)), as Congress intended under 47 U.S.C. 227(c)(5).

11

And given that there is a private right of action for violations of Section 64.1601(e), that right of action unquestionably also applies to text messages, as well. In this respect, Defendant advances a nearly identical argument that the defendant advanced, and the Court in *Newell* rejected. Defendant argues that, as a prerequisite, the communications must transit over the public switched telephone network (PSTN), and that text messages aren't sent over the PSTN. This argument fails on both prongs. As an initial matter, no part of 47 C.F.R. § 64.1601(e) purports to require that a call transit the PSTN in order to be actionable. The requirements Defendant cites which reference the PSTN appear in 47 C.F.R. § 64.1601(a), which impose "delivery requirements" on "Telecommunications carriers and providers of interconnected Voice over Internet Protocol (VoIP) services" and "intermediate providers" as opposed to "privacy restrictions" contained in 47 C.F.R. § 64.1601(e). Indeed, as the *Newell* Court observed, Defendant curiously *omits the limiting language* found at the outset of 47 C.F.R. § 64.1601(a), which states that, "*except as provided in paragraphs (d) and (e) of this section*," indicating that Section 64.1601(e) is explicitly *omitted* from the PSTN requirements of 47 C.F.R. § 64.1601(a). *Newell*, 2025 WL 2004706, at \*8 ("[T]he text of the regulation itself shows that subsection (a)'s criteria do not apply to (e).").

And, as the *Newell* court explained, at a fundamental level, no part of 47 C.F.R. § 64.1601(e) requires that calls or Caller ID transit the PSTN, or that the provision of Caller ID information be tethered to such a requirement. As the FCC observed when implementing the Caller ID Regulation itself, "The Commission has determined to require all sellers and telemarketers to transmit Caller ID information, *regardless of their calling systems*." 2003 TCPA Order, 18 F.C.C. Rcd. at 14121 (emphasis added); *Newell*, 2025 WL 2004706, at \*9. In so doing, the FCC explicitly considered technological developments of various phone systems and

technologies and arrived at an acceptable compromise: tethering the requirement to the capabilities of the telemarketer's telephone carrier, a requirement reflected in the text of the regulation itself. *Id.*

Additionally, the meaning of technical terms used within subsection (e) also show that (e) applies to text messages. Under § 64.1601(e), "[a]ny person or entity that engages in telemarketing ... must transmit caller identification information." Caller identification information is defined as "information provided by a caller identification service regarding the telephone number of, or other information regarding the origination of, a call made using a voice service *or a text message* sent using a text messaging service." *Id.* (quoting 47 C.F.R. § 64.1600(c)). This is entirely consistent with the way the phone system operates, and Defendant's argument fails as a technical matter. Text messages *are* sent over the PSTN. The FCC has clarified that its authority to regulate text messages, including under the TCPA, "is not restricted to voice calls routed via the PSTN" and that the "underlying technology does not change the fact that the numbers in question are portions of the [North American Numbering Plan] that pertain to the United States." *In the Matter of Targeting & Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247 at *18 (2023).

For the foregoing reasons, this Court should hold that there is a private right of action for the TCPA's Caller ID regulations and further hold that they apply to text messages.

## II.    Plaintiff adequately alleges that Humana directly sent the messages at issue, and is directly liable for the Do Not Call claims.

Ms. Carr adequately alleges that Humana sent the calls and text messages at issue to her cellular telephone number. First, as outlined above, she alleges direct liability on the part of Humana by claiming Humana itself sent the messages. This is so because the Plaintiff pleads that she received numerous text messages containing website links and selling Medicare Supplement

13

health insurance services, which is Humana's line of business. When the Plaintiff clicked one of the links, the link directed her to call a specific telephone number. And when the Plaintiff called the telephone number, *from a different telephone number* of hers, she was connected to Ileana Ronela Baijal, whom public records reveal is a Humana employee. Plaintiff further received calls and voicemail messages directly from Ms. Baijal and other Humana agents stating that they were calling from Humana, from other telephone numbers which transmitted Humana's Caller ID, *to the telephone number that the Plaintiff received the text messages on*, and not the number that Plaintiff called from, further cementing the logical conclusion that Humana sent the text messages. As the sender of the messages, Humana, and nobody else, would have had the Plaintiff's telephone number on which she actually received the subject messages and the ability to track the text messages, provide the telephone number that Plaintiff was told to call, and link the Plaintiff's call to the subject messages through the telephone number it told the Plaintiff to call, even though the plaintiff called that number from a different number of hers.

As an initial matter, a sister court has had little trouble refusing to dismiss manifestly similar allegations and investigatory procedures as those pled in the Plaintiff's complaint. In *Matthews v. Senior Life Ins. Co.*, the Eastern District of Virginia refused to dismiss a lawsuit where it was pled that the agent with whom the plaintiff spoke had a license as the defendant's insurance agent, that the caller identified himself as calling "from SLIC," and that the caller was selling SLIC insurance. *Matthews v. Senior Life Ins. Co.*, No. 1:24-CV-1550-MSN-LRV, 2025 WL 1899984, at *2 (E.D. Va. July 9, 2025). Those facts "establish a connection between SLIC's alleged actions and Plaintiff's purported injuries supporting an inference that SLIC, or its agent, made the calls at issue." Other Courts, including this one, are in accord. In *Griffin v. Am.- Amicable Life Ins. Co. of Texas*, No. 6:24-CV-00243-MC, 2024 WL 4333373, at *4 (D. Or. Sept.

14

27, 2024), cited by the Defendant, the Court denied a motion to dismiss where the plaintiff alleged, as here, that they were called by a licensed insurance producer for the Defendant. Similarly, in *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022), the Court denied a motion to dismiss where the plaintiff alleged that he received two calls where he was informed that he was "speaking with American-Amicable" and further that the subject of the calls "concerned insurance benefits—American-Amicable's area of business."

This Court's decisions in *Jewell v. Magnolia Bank, Inc.*, *Harrison v. Humana, Inc.*, and *Barry v. FirstSource Sols. USA, LLC*, all mandate an identical result. In *Jewell*, this Court considered whether a plaintiff had stated violations of the TCPA arising from calls allegedly made by a bank and its agents. *See Jewell*, No. 3:23-CV-78-RGJ, 2024 WL 203972, at *1 (W.D. Ky. Jan. 17, 2024). In denying the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court held that the plaintiff had stated TCPA claims based on direct liability and implied actual authority. *Id.* at *4. This holding was based on the plaintiff's allegations that the defendant had made the unsolicited calls when the caller identified himself as a representative of the defendant and called with the "purpose of promoting property, goods, or services . . ." *Id.* at *1, *4 (cleaned up). And in *Barry*, 2025 WL 1762289, at *3, this Court cited to *Jewell* and credited the caller's self-identification as calling from the defendant:

> In the Complaint, Barry alleges that the calls placed from January to February 2023 began with a prerecorded voice and the speaker self-identified as calling from FirstSource. (Compl. ¶¶ 19, 27). Barry has also alleged that the voice message directed the recipient to FirstSource's website, pointing to the existence of an "apparent relationship," that meets the required threshold at this stage. (Compl. ¶¶ 21-22); *see Hodgin*, 2015 WL 13022289, at *2. Taking these allegations as true, Barry has stated a TCPA claim by alleging that these calls were directly initiated by FirstSource. The cases cited by FirstSource either involve different sets of facts where the caller did not identify themself or do not apply because Barry only alleged more than just the content of the calls by including details such as the time period of when the calls occurred

15

and use of an artificial voice. (*See* Def.'s Mot. Dismiss 5-6, 8-10). The motion to dismiss is denied on these grounds.

The facts here are analogous to those the Court held were sufficient in *Barry*, where the plaintiff pled the receipt of automated, pre-recorded calls that directed him to visit a website which was the defendant's. Here, the text messages directed the Plaintiff to visit a generic website, presumably shortened for text messaging purposes, which, in turn, directed Plaintiff to call a specific telephone number. When the Plaintiff called the number provided from a *different telephone number of hers*, the Plaintiff spoke with an individual whom licensing records confirm is a Humana insurance agent, and then subsequently received calls back from Humana on the *original telephone number that Humana is alleged to have texted.*

Although it is true that the Plaintiff must allege either a direct or vicarious liability theory of TCPA liability, the bar for the Plaintiff is not as high as the Defendant makes out. As the District of Colorado recently held in a case in which Defendant made a similar motion to dismiss, based on, as here, calling back a number listed on a voicemail:

> Alleviate is right about the legal requirement, but wrong that the complaint is insufficient to satisfy it at the motion-to-dismiss stage. The complaint alleges that Mr. Scofield received a call and a resulting voicemail that urged him to call a number, and that the person who answered that number identified "his company" as Alleviate. Doc. 1 ¶¶ 22-27. Taking these allegations as true, as I must at this stage, and making all reasonable inferences in favor of Mr. Scofield, as I also must at this stage, this is sufficient to allow a reasonable juror to infer that Alleviate was responsible for—that is, made or initiated—the call.
>
> It may be true, as Alleviate argues, that it was not actually behind the call. Perhaps the person who answered the call was mistaken or lied about who he was working for; perhaps Mr. Scofield's account of the call is inaccurate; perhaps some other company paid for a call that was attributed to Alleviate. Those are all possibilities. If Alleviate can show that one of them is true, and that it did not actually cause the call to be made, it can win the case. And if, as Alleviate contends, the plaintiff cannot find any evidence to support his assertion that Alleviate is associated with the phone numbers or phone calls, then it can also win the case. But those are material factual disputes that cannot be resolved at this stage, at least without converting the motion to one for summary judgment. *See* Fed. R. Civ. P 12(d).

> Even if it were proper to consider Alleviate's argument that it is not connected to the number that appeared on Mr. Scofield's Caller ID, that would not change the outcome. Phone numbers are easily spoofed, and making a call appear to come from a number other than the one belonging to the actual caller is hardly unheard-of, especially in the robocalling world. Likewise, the argument that there is nothing to support the claim that the call was made by an agent of Alleviate is unpersuasive. The allegation is that the person who answered the number left in the robocall's voicemail said that he was doing so on Alleviate's behalf. Mr. Scofield may be unable to prove that down the road, but for now that is not his burden. He has plausibly alleged it, and that is sufficient to defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (plaintiff clears "the line between possibility and plausibility" if he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

*Scofield v. Alleviate Tax LLC*, No. 1:24-cv-03231-DDD-KAS, ECF No. 42 (D. Colo. Sep. 18, 2025) (citing *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1214 (10th Cir. 2007)).

Humana also falls flat in its attempt to distinguish its loss in *Harrison*, where this Court denied Humana's motion to dismiss on materially similar, and indeed weaker, allegations than those pled here. There, the Court held that disputes about whether the callers were Humana's agents go to the merits, and further that allegations similar to those here of self-identification as "with Humana," *transfers* (and not direct communications, as here) to a Humana employee, and calls promoting Humana's services, were all facts that plausibly stated TCPA claims under both direct liability and apparent authority vicarious liability theories of TCPA liability. *Harrison*, 2024 WL 4828737, at *1-*5.

The Complaint here alleges an even tighter nexus. Ms. Carr received multiple texts that promoted Medicare insurance, a core Humana product line, and included a link. That link directed her to call a specific number. When she called that number (from a different line), she reached Ileana Ronela Baijal, whom public licensing records identify as a Humana insurance employee. Thereafter, Baijal and other Humana employees called back Ms. Carr on the very DNC-registered number that received the texts, including with the Caller ID accurately displaying "Humana Inc.," and left voicemails identifying the callers as calling "from Humana."

17

That sequence, including the fact that a Humana agent answered the number and Humana initiated callbacks to the very line it texted, provides more direct indicia of Humana's authorship of the initial messages than in *Harrison* and more than adequately pleads direct liability.

Nor do Humana's traceability and "blame-some-third-party" refrains help at the pleadings stage. *Harrison* rejected the same moves, explaining that the issues of whether third parties placed the calls and whether those third parties acted as Humana's agents are merits questions inappropriate for resolution at the pleading stage. *Id.* at *2, *5:

> Humana disagrees with the allegations and instead argues that the callers were not its agents. That argument, however, goes to the merits of Harrison's claims against Humana. Because Harrison has stated colorable claims arising under the TPCA (as discussed below), this Court has standing to hear the matter and Humana may later challenge the sufficiency of the evidence supporting the TCPA claims. . . . In the Complaint, Harrison alleges that the call on May 9, 2023, which was purportedly made from the number 225-208-4162, began with a prerecorded voice and was then transferred to a person who identified him- or herself as being with Humana. Harrison has also alleged that the callers were marketing Humana's products and services. Taking these allegations as true, Harrison has stated a TCPA claim for at least one call directly initiated by Humana.

In other words, this Court has held time and again that plaintiffs need not possess details of some mysterious, undisclosed third party's relationships that only discovery will uncover, and further rejected the need to plead magic words demonstrating agency when the communications themselves plausibly manifest the defendant's role. Relatedly, Defendant simply rests on pure speculation and allegedly inconsistent facts to show that the Caller ID that sent the text messages to the Plaintiff was not Humana's Caller ID or that the website was not Humana's website. At most, these purported inconsistencies (which are easily explained), are factual disputes reserved for the trier of fact. They are not sufficient to toss this case at the pleadings stage.

To the extent Humana suggests the texts' use of a short code or third-party website link breaks the chain of causation, *Harrison* forecloses that formalism. As the Court explained in *Harrison*, given that the Plaintiff here was told to visit a website, visited that website, was told to

18

call a phone number, and then reached Humana directly, there is no indication that the Plaintiff

was not simply dealing with a marketing alias or trade name. The Plaintiff did exactly as she was

told and ended up catching Humana with its hand in the proverbial cookie jar. Humana cannot

now rely on its obfuscation of its identity, particularly at the pleadings stage, to negate the

ultimate pled fact that all the Plaintiff's interactions were with Humana. It is otherwise

"impossible for her to know of the alleged caller's relationship with Humana—if any—without

discovery." *Harrison*, 2024 WL 4828737, at *3.

Just as in *Harrison*, this Court must focus not on Humana's easily-explainable and

weakly-pled inconsistencies but instead focus on what the communications conveyed and

accomplished, promotion of Humana's insurance with Humana personnel, not on whether some

possible mysterious, undisclosed, and shadowy contractor sat in between. Here, the texts

ultimately funneled Ms. Carr to a number answered by a Humana employee, followed by

callbacks from Humana to the exact number Humana is alleged to have texted. Those facts

permit "the court to draw the reasonable inference" that Humana initiated at least some of the

communications or in the alternative and at minimum, that they were made "on behalf of"

Humana under agency principles, just as in *Harrison*. *Id.* at *1, *2.

And none of the other authorities cited by the Defendant dictate a different result. In

*Cunningham v. Health Plan Intermediaries Holdings, LLC*, for example, the plaintiff failed to

allege sufficient facts that third-party telemarketers had an insurance company's actual authority

to make calls to him, unlike here, where there is no other third-party evidently involved. No.

3:18-CV-00518, 2021 WL 1946645, at *3 (M.D. Tenn. May 14, 2021). Direct identification by

name is the strongest indicia of direct liability that there is. To that end, some of the Defendant's

citations actually support the Plaintiff and a finding of direct liability under circumstances

19

similar to those here. *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2, actually supports the Plaintiff because there, the seller was *named in the text messages*. In *Childress v. Liberty Mut. Ins. Co.*, the plaintiff received a prerecorded message from a fictitiously named robot, "Jason," with "Cheap Insurance Experts," and was "transferred to an individual named 'Steve Ross' and indicated that he was located at a call center in Dallas, Texas." No. 17-CV-1051 MV/KBM, 2018 WL 4684209, at *1 (D.N.M. Sept. 28, 2018). Based on only that interaction, the Plaintiff then made the allegation that Mr. Ross was a "live person telemarketer employed by Defendant [Liberty Mutual Insurance Company]," apparently because Liberty Mutual has a call center in Dallas, and without citing to any evidence to why this was the case, not even a statement made by Mr. Ross. *Id.* at *3 ("[T]here are no factual allegations that Defendant actually made the telephone call at issue."). Similarly, in *Sepehry-Fard v. Dep't Stores Nat'l Bank*, in his second amended complaint, despite the Court giving plaintiff "clear directions," the plaintiff "fail[ed] to provide any facts to substantiate his claim," because, "[f]or example, plaintiff [did] not identify the content of any call, whether prerecorded or not." 15 F. Supp. 3d 984, 987 (N.D. Cal. 2014).

Ms. Carr pleads that Humana itself placed the calls and buttresses those allegations with specific facts, as outlined above. Nothing more is required. For example, in *Bradshaw v. CHW Grp., Inc.*, --- F. Supp. 3d ----, 2025 WL 306783, at *3 (D.N.J. Jan. 24, 2025), another case lost by defendant on a similar motion, the Court remarked as to the importance of the plain allegation at the pleadings stage that the caller stated that they were calling from the defendant's company:

> At first glance, these allegations seem like a strong basis for attributing the December 8 call to the Defendant. After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who he is. So too as to the December 8 call. The caller allegedly introduced herself as 'Erica ... from [the Defendant].' Why then would it not be plausible to conclude that he was, in fact, 'Erica ... from [the Defendant]'?

20

*See also Smith*, No. 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022) ("The Court finds that, if true, Plaintiff's allegation that he was informed during both prerecorded calls that he was speaking with American-Amicable supports a plausible inference that Smith was indeed called by or on behalf of American-Amicable."). As yet another district court summarized in rejecting an argument similar to what Humana advances here:

> CHW's weakest argument by far is that the complaint alleges insufficient facts to support a reasonable inference that CHW directly placed the calls at issue or had an agency relationship with some third party who placed these calls on its behalf. This is obviously wrong. Among other things, Mr. Katz's complaint alleges that CHW explicitly 'identified itself by name on several of the calls' to Mr. Katz, see Doc. 23, ¶ 54, and that, for example, one call began with a prerecorded message stating that "[t]his call is being placed on behalf of Choice Home Warranty for telemarketing purposes," id. at ¶ 56, that another call was from a live caller who identified himself as "Richard Kelly from CHW," id. at ¶ 57, and that another prerecorded call had a message stating "[h]ey, this is Jen from CHW," id. at ¶ 58 . . . . . The Court does not see what more could possibly be necessary or useful for supporting a reasonable inference at the pleading stage that CHW was, indeed, the entity ultimately responsible for placing these calls to Mr. Katz.

*Katz v. CHW Grp., Inc*., No. 5:22-cv-5198, 2023 WL 6445798, at *4 (W.D. Ark. Sept. 29, 2023).

The content of the messages also helps establish that they were solicitations, as they were plainly sent to encourage the Plaintiff to purchase Humana's insurance services. To the extent that the Defendant feels that it has an affirmative defense of consent based on the Plaintiff's conduct during the investigatory call and receipt of telephone calls to the original telephone number, despite having called from a different number, that is Defendant's burden and not justiciable at the pleadings stage. Notably, any alleged business relationship would have been between the Plaintiff's *other telephone number* and Humana, not the number on which she received the subject text messages and subsequently received calls. As another court has explained, that doesn't create a business relationship, "The fact that he "play[s] along" with telemarketing scripts to "find out who [they] really are" is not as devious as Defendant suggests.

21

A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the content of the message can help prove that it was a solicitation." *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *4 (E.D. Pa. Apr. 5, 2019); *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *5 (D.N.J. Jan. 11, 2023) ("[W]hile Plaintiff only alleges the specific content of one call, she answered the phone on at least three occasions, claims that Defendant began calling [the plaintiff] on her cellular telephone to sell Plaintiff a home warranty plan, that the calls were for telemarketing purposes, and that Defendant placed calls to [the plaintiff] on numerous occasions attempting to solicit Plaintiff a home warranty plan[.] These allegations create a reasonable inference that more than one of the seven calls explicitly listed were 'telephone solicitations' in violation of the statute.").

Finally, the Court need not embark on a liability or consent analysis as to the Plaintiff's Caller ID claims. The text of the provision itself is written in such a way that it expressly imputes liability on entities whose goods and services are promoted on the call, even when (and if) they use third party telemarketers. It provides such entities two alternative options: either transmit the telemarketer's Caller ID name, or transmit the seller's name (i.e. transmit Humana's name). § 64.1601(e). There is no third option. That structure is by design: the Caller ID rule targets the telemarketer's (or ultimate company's) duty to reveal itself on all telemarketing calls, ensuring transparency across the board. Section 64.1601(e)(1) prohibits telemarketers from appearing on telephone subscribers' Caller IDs as unknown by requiring them to transmit the enumerated Caller ID information. The operative language *directly* regulates the conduct of telemarketers *and the companies that hire them* by requiring transmission of either name, rendering vicarious liability inapplicable. It also does not carve out (or condition liability upon) the called party's classification, as contrasted to the Do Not Call rules, either.

At bottom, because Ms. Carr alleges that Humana directly placed the calls at issue, and supports that conclusion with specific factual allegations, she adequately alleges direct liability. *See Taylor v. Suntuity Solar Ltd. Liab. Co.*, No: 8:23-cv-00694-MSS-AEP, 2024 WL 964199, at *6 (M.D. Fla. Mar. 6, 2024) ("Plaintiff alleges Defendant initiated the telemarketing calls. Specifically, Plaintiff alleges, 'The Plaintiff received calls from Suntuity Solar on at least January 31 and February 8, 2023.' . . . . Because the Court takes Plaintiff's allegations as true at this stage in the proceedings, dismissal for failure to state a claim on the grounds Defendant asserts is inappropriate."). Defendant cannot defeat the Plaintiff's plausible inferences using speculation, for there is no inquiry without a starting point, and the starting points must be accepted as known in some sense, even if they are not known in the strictest sense. To attempt to doubt these starting points at the outset would prevent any inquiry from proceeding. The Plaintiff has alleged that Humana directly made the calls at issue. Plaintiff's allegations are sufficient at the pleadings stage. Should this Court at all find the Plaintiff's pleading at all deficient, the Court only need give the order granting the Plaintiff leave to amend and he will do so to rectify any perceived deficiency. Relatedly, the Court should deny Defendant's footnoted "mini-motion" to change the scheduling and discovery in this case absent an explicit formal motion for the same.

## Conclusion

Ms. Carr more than adequately alleges that Humana sent the communications at issue to her cellular telephone, including with illegally deficient Caller ID information, for which there is a private right of action. As a result, she adequately alleges her claims, and this Court should deny Humana's motion to dismiss in its entirety. To the extent that additional questions remain, the Court should resolve those issues in discovery, or otherwise grant leave to amend as necessary.

Plaintiff,

By Counsel

Dated: September 22, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
(Subject to *Pro Hac Vice*)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and Proposed Class*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

September 22, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.