## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY

**KIMBERLY CARR,** individually and on behalf of all others similarly situated,

*Plaintiff,*

*v.*

**HUMANA INC.**

*Defendant.*

Case No. 3:25-cv-476-DJH

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## DEFENDANT HUMANA INC.'S REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff's Opposition to the Motion to Dismiss ("Opposition," Doc. 20) confirms that she has not pleaded the elements of a Telephone Consumer Protection Act ("TCPA") claim. Plaintiff spends almost all of her brief on her claim that she was sent text messages that allegedly violated Caller ID regulations, and all but ignores her other theory that calls that she received – only after she first called to inquire of Humana – violated the TCPA. In any event, none of her arguments salvage any of her claims.

As to text messages, the very December 2023 FCC Order that Plaintiff purports to cite plainly states that its Caller ID regulation does *not* apply to text messages. Further, even if the regulation applied to text messages rather than just calls, Plaintiff admits that the majority of courts to have faced the issue hold that the regulation does not give rise to a private cause of action. Plaintiff offers no well-reasoned basis to reject the majority position.

But even if the Caller ID regulation applied to text messages and authorized a private right of action, Plaintiff has still failed to adequately plead that Humana is directly or vicariously liable

for the text messages sent to Plaintiff. Plaintiff obfuscates what she *actually pleaded* about the Humana's connection to the messages, but the Complaint itself shows *no actual well-pleaded allegation* that Humana either sent or directed their sending. Rather, the Complaint merely asserts that someone sent Plaintiff text messages that said nothing about Humana on their face, but that a link contained in them took Plaintiff to a website that somewhere included a phone number that *she* subsequently called and reached someone at Humana. Many sites (including directories, blog posts, trade association sites, etc.) include among their contents phone numbers for entities other than the owner of the site. That does not amount to a well-pleaded allegation that Humana sent the text messages or authorized someone else to do so on Humana's behalf.

As for Plaintiff's claims based on phone calls rather than text messages, Plaintiff all but fails to respond to Humana's argument that the Complaint describes calls that came *in response to a preceding phone inquiry from Plaintiff* and therefore are not unsolicited "telephone solicitations" under the TCPA. The single paragraph (out of a 23-page brief) that Plaintiff devotes to this issue only argues that this is an affirmative defense and thus may not be addressed on a motion to dismiss. On this, Plaintiff is wrong. As an initial matter, whether a call is a "telephone solicitation" is an element of Plaintiff's prima facie case. But even if it wasn't, courts can—and regularly do— dismiss claims on grounds of meritorious affirmative defenses that are apparent from the face of a complaint. *See, e.g.*, *Marsh v. Ford Motor Co.*, 866 F.2d 1316 (6th Cir. 1989) ("Dismissal of plaintiff's complaint based upon the affirmative defense of the statute of limitations was proper because it is obvious from the face of the complaint"); *Russell v. First Baptist Church, Fulton, KY*, 2017 WL 5162820, at *5 (W.D. Ky. Nov. 7, 2017) (dismissing case because affirmative defense was obvious from the face of the complaint); *Murphy v. Wesley*, 2007 WL 950259, at *1 (W.D. Ky. Mar. 22, 2007) (same); *Thomas-Lawson v. Koons Ford of Baltimore, Inc.*, 2020 WL 1675990,

at *5 (D. Md. Apr. 6, 2020) (dismissing TCPA claims based on plaintiff's established business relationship with defendant, which was apparent from the allegations in her complaint). Plaintiff freely pleads that her inquiry to Humana *preceded* Humana's calls back to her, and therefore, she has not stated a claim that she was subjected to unsolicited "telephone solicitations" under the TCPA. Accordingly, the Court should dismiss this case.

A.    <u>**ARGUMENT**</u>

A.    **The Caller ID Related Claims Should Be Dismissed Because The TCPA's Caller ID Regulation Does Not Apply To Text Messages.**

Plaintiff cites no authority that supports that the Caller ID regulation applies to text messages. Indeed, Plaintiff misleads with her citation to the FCC's December 18, 2023 Order on robocalls and robotexts ("December 2023 Order"). Plaintiff cites the December 2023 Order for the proposition that the FCC's "authority to regulate text messages, including under the TCPA, 'is not restricted to voice calls routed via the PSTN.'" Opp. at 13, quoting December 2023 Order, 38 FCC Rcd. 12247, 12272. But even if this were a fair characterization of what the FCC said about its *authority* to regulate under the TCPA (which it isn't, as explained below), Plaintiff fails to disclose that the same December 2023 Order clearly states that the FCC has expressly *declined* to exercise any such authority in the way Plaintiff claims: by applying the Caller ID regulation to text messages. The FCC could not have been clearer:

> "We agree with commenters that number spoofing in the SMS/MMS domain is rare at this time. . . . *[W]e decline to adopt caller ID authentication requirements for text messages*."

December 2023 Order at 12269 (emphasis added). Plaintiff also ignores that the FCC had also expressly declined to apply the Caller ID regulation to text messages nine months earlier:

> "Finally, *we decline to adopt caller ID authentication requirements for text messages* based on record uncertainty about the current feasibility of such a requirement. . . . [T]he current antirobocall regime is targeted at the primary sources

of illegal robocalls, i.e., unverified telephone caller ID information and a common carrier regulatory regime, which ***does not apply to text messages***."

*See* 38 FCC Rcd. 2774, 2758–59 (March 16, 2023) ("March 2023 Order") (emphasis added). But in addition, Plaintiff mischaracterizes the December 2023 Order's discussion of the FCC's *authority* to regulate text messages under the TCPA. The section of the Order that Plaintiff quotes refers to the authority granted to the FCC under "[S]ection 251(e)(1) of the Communications Act" – *not under the TCPA*. December 2023 Order, 38 FCC Rcd. 12247, 12272. Plaintiff has not been straight with the Court in asserting that this passage from the December 2023 Order related to the FCC's "authority to regulate text messages, including under the TCPA…" because it clearly did not. *See* Opp. at 13.

Further, the plain language of the Caller ID regulation illustrates that it does not apply to text messages, which are not sent over the PSTN. 47 C.F.R. § 64.1601(a). The PSTN is "a network interconnected to the [North American Numbering Plan's] 10-digit system of telephone switching." *In re MCP No. 185*, 124 F.4th 993, 1011 (6th Cir. 2025). The FCC cannot change the original meaning of the PSTN to add IP addresses or other new technology. *Id.* at 1012; *see also* 33 FCC Rcd. 12075, 2018 WL 6590245, ¶ 33 n. 109 (Dec. 13, 2018) ("the public switched network itself is not one that generally supports text messaging."). This is because "texting is not a common carrier service." March 2023 Order, 38 FCC Rcd. 2744, 2745 n.3; *accord Twilio, Inc. v. Telesign Corp.*, 2017 WL 4573371, at *1 (N.D. Cal. Oct. 13, 2017) (distinguishing voice calls transmitted over the PSTN from text messages sent via SMS).

For these reasons, Plaintiff has failed to plausibly allege that the TCPA's Caller ID restrictions apply to text messages, and no amendment could cure this defect. The Caller ID regulation under the TCPA does not in fact apply to text messages, so Plaintiff's Caller ID claims (which are based solely on alleged text messages) should be dismissed.

**B.    The Court Should Dismiss Plaintiff's Caller ID Claims Because There Is No Private Right Of Action Available For The TCPA's Caller ID Regulation.**

Because the Caller ID regulation plainly does not apply to text messages and the only Caller ID related claims in the Complaint are based on alleged text messages rather than calls, the Court does not need to consider Plaintiff's lengthy exegesis on the origins of the TCPA's Caller ID regulation and her citations to a handful of outlier, largely unreported, out-of-district decisions that misread the law to erroneously find a private right of action under this inapplicable regulation. To the extent the Court does, it should follow the well-reasoned majority position, which is in line with the TCPA and FCC guidance, and decline to find a private right of action here.

With only a few outliers (none of which come from the Sixth Circuit Court of Appeals or this District), courts have overwhelmingly held that the Caller ID regulation (which applies to calls but not text messages, as discussed above) does not create a private right of action. *See* Motion at 4-5 (collecting cases). Plaintiff asks the Court to disregard the majority opinions because, in her view, they "do not engage in a proper analysis of the statute." Opp. at 4. In other words, Plaintiff disagrees with the result that most courts have reached that do not support her claim. This is not a compelling argument.

As Humana explained in its opening brief, the TCPA offers a private right of action only under certain circumstances—namely only for violations of § 227(c) (the "do not call/fax" provisions)—and not for violations of subsections (d) (dealing with "technical and procedural standards") or (e) (which governs "misleading or inaccurate caller identification information"). *See, e.g.,* Motion at 5-6 (citing 47 U.S.C. § 227(b)(3)(A) (private right of action applies only to a "violation of the subsection or the regulations prescribed under this subsection.")). Plaintiff offers no citation to any FCC rule-making that states that the Caller ID regulation was promulgated under

Section 227(c)'s do not call restrictions, and the assertion that it is a regulation relating to "consumer privacy" (which is referenced in subsection (c)) does not pass the straight face test.

To make her argument, Plaintiff relies heavily on *Dobronski v. Selectquote Ins. Servs.,* an outlier case from the Eastern District of Michigan, but even this court acknowledged that the majority view is that the Caller ID regulation lacks a private right of action, and the opinion offers no well-reasoned basis to find otherwise. *See* 773 F. Supp. 3d 373, 376 (E.D. Mich. 2025) ("*Selectquote*"). Further, the court's reasoning in that case, like the handful of other cases that follow the minority position, is unpersuasive. Instead of considering whether any statutory provision gave FCC the authority to create a private right of action for failure to transmit Caller ID information, the district court in *Selectquote* undertook a flawed process of elimination analysis. The court reasoned that the sections of the TCPA that do not authorize private rights of action could not be the source for FCC's authority to issue the Caller ID regulation, so therefore FCC must have been acting under authority granted in a provision that does authorize a private right of action. *See id.* at 376–77. But even if the court were correct that the other sections did not authorize the rulemaking, this would not mean that section 227(c) must have authorized it when all FCC guidance is to the contrary.

While some of Plaintiff's cited authorities on this point support her position but are not well-reasoned, multiple other cited opinions are simply misrepresented by Plaintiff and not actually applicable. For example, *Radvansky v. Kendo Holdings, Inc.* does not stand for the proposition that the Caller ID regulation was promulgated under subsection (c). *See* Opp. at 7 (quoting 744 F. Supp. 3d 1314, 1321, 1321 n.3, n.4 (N.D. Ga. 2024)). Instead, the cited footnote states that the 2003 Order changed the definition of "residential subscriber" throughout 47 U.S.C. § 227, and not that the entire 2003 Order was promulgated under 47 U.S.C. § 227(c). *Id.* Likewise,

the court in *Siringi v. Parkway Fam. Mazda/Kia* observed that FCC "promulgated 47 C.F.R. § 64.1200 under its authority to implement the Telephone Consumer Protection Act," but that case does not involve any Caller ID claims (and in fact the case never refers to the Caller ID regulation *at all*), and instead involved National Do Not Call Registry claims. *See* 349 F.R.D. 641, 644 (S.D. Tex. 2023) (cited in Opp. at 20)*.* And the court in *Dobronski v. JuliasAngel Mktg., LLC* did not reach the private right of action question, because it found that the plaintiff failed to state a cognizable TCPA claim for other reasons. *See* 2025 WL 2659265, at *11 (E.D. Mich. Sept. 17, 2025) (cited in Opp. at 20).

As explained above, and contrary to Plaintiff's contention, there is no private right of action under the TCPA's Caller ID regulation, 47 C.F.R. § 64.1601(e)(1), so these claims would be subject to dismissal on this ground, even if the Caller ID regulation applied to text messages (which it does not).

### C.  Plaintiff's Text Message-Based Claims Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Plausibly Allege Humana Sent Them.

Plaintiff's pleaded allegations also fail to allege any actual connection between Humana and the text messages. Although Plaintiff's opposition brief tries to distract the Court with new characterizations of these allegations, the relevant question for the Court at this juncture is *what Plaintiff pleaded*. And Plaintiff failed to plead that Humana took any action to either send the text messages, authorize any third party to send them, or ratify their sending.

In fact, Plaintiff's Complaint says the opposite. It includes screenshots of the alleged messages, and they say nothing about Humana. Doc. 1 at ¶ 27. The text messages included a link to a website address ("medipolicy.co") that Plaintiff does not claim belongs to Humana (and did not belong to Humana). Her allegations about the website are tellingly vague, not purporting to quote any of the website's actual language, but only asserting that *somewhere* on the website

(which appears no longer to be active) was "listed a phone number of (855) 784-4371 to call for more information," and that she was able to reach someone at Humana by calling the number. *Id.* at ¶¶ 28-30.

Even if the website had included somewhere among its contents a phone number that reached someone at Humana, that does not suffice to plead that Humana sent the messages, that Humana allowed its number to be published on the admittedly-third-party site, or that Humana even knew of the site's existence. Phone numbers appear on countless websites (*e.g.*, blogs, directories, consumer guides) without the owner's involvement, consent, or knowledge.

Plaintiff's allegations—that she clicked a link in the text message and landed on a website that somewhere included the number (855) 784-4371, which she then called and spoke with someone claiming to be from Humana—do not support the inference that Humana sent the texts. *See DISH Network*, 28 FCC Rcd. 6574, 6582–83 (2013) (direct liability applies only to entities that initiate communications by taking the steps necessary to physically send them). Plaintiff includes no well-pleaded allegations that Humana sent the texts (or even operated the website). Notably, Plaintiff never alleges that the short code belongs to Humana—and it does not.[1] Plaintiff's claims are speculative and unsupported. At best, Plaintiff's allegations amount to threadbare recitations of legal conclusions, which fail to meet the pleading standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (conclusory statements without factual support do not suffice).

In support of her arguments, Plaintiff relies on a variety of out-of-circuit, nonbinding cases that do not contain "similar allegations" (as she misleadingly claims). Opp. at 14. In *Matthews v. Senior Life Ins. Co.*, an out-of-circuit district court initially dismissed the complaint for lacking factual development and relying solely on conclusory allegations that the defendant made the calls,

---

[1]       All shortcodes and their owners can be traced on https://shortcodes.info.  As reflected there, this shortcode did not belong to Humana.

much like Plaintiff does here. *See* 2025 WL 1899984, at *2 (E.D. Va. July 9, 2025). Although the plaintiff later amended the complaint, the Court found it sufficient only because he added allegations that **the caller** was a licensed agent who identified themselves as representing the defendant and selling its insurance—*i.e.*, the very allegations Plaintiff does not, and cannot, make about the messages or callbacks alleged here. *Id*.

Similarly, in *Griffin v. American-Amicable Life Insurance Company. of Texas*, the plaintiff alleged that the caller explicitly stated they were an agent of the defendant and attempted to sell its life insurance. *See* 2024 WL 4333373, at *4 (D. Or. Sept. 27, 2024). In *Smith v. American-Amicable Life Insurance Company of Texas*, the court actually granted dismissal with leave to amend (on other grounds) where the pre-recorded calls clearly identified the defendant and directed the plaintiff to its official website—not a third-party site. *See* 2022 WL 1003762, at *2, *4 (E.D. Pa. Apr. 4, 2022). The same pattern appears in *Barry v. FirstSource Solutions USA, LLC*, where the caller identified themselves as representing the defendant and directed the plaintiff to its official website. *See* 2025 WL 1762289, at *3 (W.D. Ky. June 25, 2025). Notably, as Plaintiff herself concedes, the *Barry* court distinguished its facts from cases where callers failed to identify themselves. *Id*.; Opp. at 15. Plaintiffs' citations to these cases are all immaterial because Plaintiff freely admits that the text messages never included any identification that they were from Humana, nor did they even lead to an official website belonging to Humana.

In another inapposite case cited by Plaintiff, *Jewell v. Magnolia Bank, Inc.*, the plaintiff received a call from a third party claiming to market services on behalf of the defendant. *See* 2024 WL 203972, at *1 (W.D. Ky. Jan. 18, 2024). That caller transferred the plaintiff to a representative who stated they were from the defendant and gave a callback number. The plaintiff later received

9

two phone calls from that callback number. *Id*. The court held that only those two calls—and not the earlier initial call—plausibly came from the defendant and could support direct liability. *Id*.

All these cases are clearly distinguishable. Unlike those cases, Plaintiff's Complaint nowhere alleges that the text messages identified Humana as the sender or promoted products or services on behalf of Humana. *See* Compl. at 5. Further, here it was Plaintiff that initiated contact with Humana and only after initiating contact to inquire about Medicare plans did Humana allegedly contact Plaintiff. Plaintiff has therefore not alleged any facts sufficient to establish direct liability for the text messages. Her claims rest on inference and conjecture, not plausible allegations. The Court should dismiss them.

But Plaintiff not only fails to plausibly allege direct liability against Humana for the text messages, she also fails to establish any basis for vicarious liability. Her conclusory assertions do not support an agency relationship between the sender and Humana under any recognized theory. *DISH Network*, 30 FCC Rcd. at 6574 (vicarious liability under the TCPA is governed by the federal common law of agency, *i.e.*, actual authority, apparent authority, and ratification).

First, Plaintiff does not allege that Humana made any statement or took any action that would lead the sender to believe it had actual authority to send the text messages as Humana's agent. *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2021 WL 1946645, at *3 (M.D. Tenn., May 14, 2021) ("An agent acts with actual authority when, at the time of [the action], the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to so act."). She also fails to allege conduct by Humana that could reasonably lead Plaintiff to believe the sender had apparent authority. *Id*. (apparent authority requires a third party's reasonable belief traceable to the principal's manifestation). Nor does Plaintiff allege that Humana knowingly received any benefit from the messages, which forecloses

any ratification theory. *Id*. at *4 (ratification requires knowing acceptance of benefits from the actor's conduct).

Again, Plaintiff's Opposition mischaracterizes several factually distinguishable, nonbinding cases as "materially similar, and indeed weaker." *See* Opp. at 17. In *Harrison v. Humana*, the plaintiff alleged that calls were made either by Humana's employee or by a third party acting under a contractual relationship with Humana. *See* 2024 WL 4828737, at *1 (W.D. Ky. Nov. 19, 2024). The court found that the plaintiff had plausibly pleaded direct liability by alleging calls made by the employee. *Id*. at *3. For calls alleged to have been made by the third party, the court found the plaintiff had adequately alleged an agency relationship by pleading that callers identified themselves as Humana's agents and transferred the plaintiff to Humana's employees, who then marketed Humana's products. *Id*.[2] That is very different than here, where Plaintiff alleges no contractual (or any other) relationship between Humana and the sender of the texts. She was not transferred to a Humana agent; rather, she says she called Humana herself. She does not claim the text messages identified Humana or promoted Humana's services. Her convoluted path to eventually reach Humana does not plausibly plead the sender had authority to act on Humana's behalf.

Overall, the cases Plaintiff cites simply do not support her claims. In each, the plaintiff alleged that the caller ***explicitly stated they were calling from or on behalf of the defendant***. *See* Opp. at 14–23 (citing *Matthews*, 2025 WL 1899984, at *2; *Griffin*, 2024 WL 4333373, at *4; *Smith*, 2022 WL 1003762, at *2; *Jewell*, 2024 WL 203972, at *1; *Barry*, 2025 WL 1762289, at *3; *Harrison*, 2024 WL 4828737, at *1-5; *Bradshaw v. CHW Grp., Inc.*, 763 F.Supp. 641, 648 (D.N.J. 2025); *Katz v. CHW Grp., Inc.*, 2023 WL 6445798, at *4 (W.D. Ark. Sept. 29, 2023);

---

[2]    Humana notes that the court accepted these allegations as true, as required by Rule 12, but that Humana denied – and continues to deny – that the allegations in *Harrison* had any merit.

*Taylor v. Suntuity Solar Ltd. Liab. Co.*, 2024 WL 964199, at *6 (M.D. Fla. Mar. 6, 2024)). In contrast here, ***nowhere did the text messages reprinted in this Complaint state they were from Humana***.

To round out, Plaintiff's reliance on *Shelton v. National Gas & Elec*tric *LLC* is also misplaced; the language she cites pertains to Article III standing, not direct or vicarious liability. *See* 2019 WL 1506378, at *4 (E.D. Pa. Apr. 5, 2019) (allegations involved use of an automatic telephone dialing system in violation of the TCPA). Plaintiff also cites *Scofield v. Alleviate Tax LLC*, where the caller left a voicemail inviting the plaintiff to call a number for tax relief services. No. 1:24-cv-03231-DDD-KAS, ECF No. 42, at *2 (D. Colo. Sep. 18, 2025). Upon calling, the plaintiff spoke with someone who immediately identified their company as the defendant's. *Id.* at *3. That *direct* interaction supported a plausible inference of liability. In contrast, Plaintiff here relies on a multi-step, speculative chain: she received a text message, clicked a link to a website, found a phone number somewhere among the contents of the site, called it, and spoke with someone who said they were from Humana. That does not support that *Humana* even knew about the sending of the text message or its phone number being on the webpage which mysteriously no longer exists, much less that it authorized either.

For all these reasons, Plaintiff has failed to plausibly allege that Humana is liable for the text messages, either on a theory of direct or vicarious liability. Her claims rest on speculation, not facts. The Court should dismiss them.

> **D.    The Court Should Dismiss Plaintiff's Telephone Call Based Claims in the Complaint Because Plaintiff Fails to Plausibly Allege That the Return Calls Made to Plaintiff Are "Telephone Solicitations."**

In her 23-page Opposition, Plaintiff barely discusses Humana's arguments about the telephone calls she allegedly received. Opp. at 2. Yet it is apparent from the face of the Complaint that these calls were not "telephone solicitations." Plaintiff does not engage substantively and

12

instead relies solely on the argument that an affirmative defense (such as an established business relationship) cannot be resolved on a motion to dismiss. Opp. at 21. However, the fact that Plaintiff expressly pleads that Humana only called her *after she first called Humana* goes to the prima facie elements of her claim – namely whether Plaintiff received a "telephone solicitation," which federal law states clearly does not include a call made "to any person with whom the caller has an established business relationship ["EBR"]." 47 U.S.C. § 227(a)(4)(B); 47 C.F.R. § 64.1200(f)(15). Plaintiff's inquiry created an EBR and means that Plaintiff has not stated a cognizable claim.

But even if this were only relevant to an affirmative defense and not Plaintiff's prima facie case, it could (and should) still be decided now. "[W]hen an affirmative defense appears on the face of the complaint, a complaint is subject to dismissal for failure to state a claim[.]" *Pierce v. Oakland Cnty.*, 652 F.2d 671, 672 (6th Cir. 1981). Indeed, it is well established that a complaint "is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy." *See* § 1357 Motions to Dismiss— Practice Under Rule 12(b)(6), 5B Fed. Prac. & Proc. Civ. § 1357 (4th ed.). Courts in this Circuit and elsewhere regularly dismiss claims on their face where the allegations reflect meritorious affirmative defenses, including the affirmative defense of EBR. *See, e.g., Marsh*, 1989 WL 113894, at *1 (affirming dismissal because "the affirmative defense" was "obvious from the face of the complaint."); *Russell*, 2017 WL 5162820, at *5 (dismissing case because affirmative defense was "obvious from the face of the complaint") *Murphy,* 2007 WL 950259, at *1 (same); *see also Thomas-Lawson*, 2020 WL 1675990, at *5 (dismissing TCPA claim because "[t]he allegations on the face of the Complaint demonstrate[d] the existence of an established business relationship, as defined in the statute.").

Here, by calling Humana and requesting information about Medicare, Plaintiff established a business relationship that is apparent on the very face of the Complaint. Plaintiff alleges that prior to receiving any telephone calls from Humana, she herself initiated a call to Humana on February 28, 2025, "for more information." Compl. at ¶¶ 28–30. Plaintiff contends she spoke to someone who stated she was from Humana. *Id.* ¶ 30. She further alleges that she received callbacks from Humana on or before March 8, 2025 – only 8 days after her inquiry. *Id.* ¶¶ 33–37. By making an inquiry to Humana, Plaintiff established an EBR that began on February 28, 2025, and would have ended three months later, on May 28, 2025. *See* 47 C.F.R. § 64.1200(f)(5) (EBR based on inquiry lasts for three months following the inquiry)*; Johansen v. Nat'l Gas & Elec. LLC*, 2017 WL 6505959, at *4 (S.D. Ohio Dec. 20, 2017) (EBR based on inquiry or application existed where "after getting disconnected from the initial phone call, [plaintiff] called back to inquire about [defendant's] services (the inquiry or application)"). Plaintiff's allegations themselves admit that all the supposed calls from Humana were made prior to the expiration of the EBR.

Plaintiff's argument that an EBR cannot exist unless it was instituted by the same telephone number on which she was called is baseless. *See* Opp. at 21. Plaintiff invents this, since nowhere in the statute or regulations is this required. *See* 47 C.F.R. § 64.1200(f)(5). An EBR may be established in many ways, and there is no requirement that it be instituted by the same telephone number on which a plaintiff is called. *See, e.g., Morris v. Copart*, 2016 WL 6608874, at *2–3, *33 (E.D. Tex. Nov. 9, 2016) (EBR created when plaintiff received a telemarketing call and in response, indicated he was interested in donating a car); *Hamilton v. Spurling*, 2013 WL 1164336, at *1, *10 (S.D. Ohio Mar. 20, 2013) (EBR created when plaintiff's wife set up an appointment with a chiropractor).

Accordingly, Plaintiff has not alleged that Humana made any "telephone solicitations" to her and therefore, she has not stated a claim for violations of the TCPA's Do Not Call provisions. No amendment could cure this defect, as she has already plausibly alleged the existence of an EBR. Therefore, the Complaint should be dismissed with prejudice.

## II.    CONCLUSION

For all of the foregoing reasons, Humana respectfully requests that this Court dismiss the Complaint with prejudice pursuant to Rule 12(b)(6).[3]

Dated: October 6, 2025                    Respectfully submitted,

By:  */s/        Michael P. Abate*
Michael P. Abate
Burt A. ("Chuck") Stinson
Kaplan Johnson Abate & Bird LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
(502) 450-8280
mabate@kaplanjohnsonlaw.com
cstinson@kaplanjohnsonlaw.com

Darci Madden (*admitted pro hac vice)*
Martha Kohlstrand (*admitted pro hac vice*)
Justin Kingsolver (*admitted pro hac vice*)
Bryan Cave Leighton Paisner LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
darci.madden@bclplaw.com
justin.kingsolver@bclplaw.com
martha.kohlstrand@bclplaw.com

---

[3]    If the Court believes that Plaintiff has sufficiently pleaded any claim, Humana respectfully requests that the Court set a schedule that limits initial discovery to (1) whether Humana had any role in sending these text messages (if the text message claim survives) and (2) whether the calls to Plaintiff were made in response to an inquiry from Plaintiff (if the call claim survives). Humana also requests that the Court establish an expedited schedule for Humana to move for summary judgment on these threshold, dispositive issues. It would serve the interests of judicial economy to resolve them at the outset.

15

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on October 6, 2025, a copy of the foregoing was served on counsel through the ECF system, and that a copy was served on the following by electronic mail:


*/s/_____Michael P. Abate*